All right. Can the attorneys who are going to argue approach the podium and identify yourselves for the record, please? Roger Ripps for the Plaintiff Appellant Ferrari. Good morning. Good morning. Melissa Graham for Union Pacific. All right. Mr. Ripps, how long did you want to reserve for rebuttal? Three minutes, please. All right. So it will be 12 minutes for your opening argument and three minutes for rebuttal. Thank you. All right. You can proceed. May it please the Court. A trial court commits reversible error when it refuses to instruct the jury on a theory of liability pleaded by the plaintiff, supported by evidence of record, and for which an instruction has been tendered. Mr. Ripps, isn't there a requirement that there has to be sufficient evidence presented in order to instruct the jury on this? Sufficient evidence means some evidence. There is no quantum. There is no de minimis. So tell me what the evidence presented was that established enough for the judge and Judge Flannery on the motion for new trial to how they were in error in finding that there wasn't sufficient evidence. So tell me what there was. Sure. And I'll answer that and then I'll explain why the sufficiency isn't part of the inquiry. I can't wait. The answer to Presiding Justice Burke's question is that plaintiff testified that there was no padding, there was nothing on the ground or anything else that would have protected her in case somebody fell. Did she say that? Are you adding some words now? I'll read the exact question and answer, Justice McBride. All right. And this is in the appendix at A16 and in the record at 1236. The question is, did the railroad have any sort of pads or anything on the ground beneath the test area to maybe help in case somebody fell? The answer is no. Now, everybody else agreed there was nothing that would have protected her in case of a fall. Wasn't her position on the railroad car on the bottom sill and it was about a two-foot drop? Yes, her feet were on the bottom sill. It was about two feet between the bottom of her feet and the rock ballast. So her back is about five feet. There was no medical testimony saying that falling five feet onto her back onto rock would not have caused any injury. Dr. Fetter even said she had a lumbar sprain. Was there any testimony saying that during this type of training exercise there should have been padding? Did anybody testify to that? No. Did you say the distance of her fall was five feet? What I said was her back was five feet above the ballast. Her feet were two feet from the ground. Okay, so what was the testimony regarding the actual drop? There's a variance. Is it 24 inches or is it 60? No, in some of the medical history she says she fell four feet. Was there any testimony by the railroad about the distance from the sill to the ground was two feet? I don't recall that. I believe the distance from the sill and the bottom of her feet was about two feet. Okay. Her back obviously is higher than that. Does the general duty, is there a general duty that was testified to in this case that there was a duty to have a cushion? Not a duty to have a cushion, but that gets into the distinction between the railroad statutory duty to provide a safe place to work. Provide a safe place to work. The railroad has a statutory duty under Section 45 of the U.S. Code, Section 51, to use ordinary care to provide the employees with a reasonably safe place to work. Did anyone testify, anyone? Was anybody asked, any railroad employee, any witness, any doctor, there was a duty to provide a cushion? No. And it's not necessary. And let me kind of back up procedurally just a little bit, because the quantum of evidence argument is appropriate for directed verdict. Is there evidence in the record that would justify submitting the case to the jury? And the railroad made a motion for directed verdict on all of the theories in Claims Complaint. Judge Flanagan denied that and specifically found that there was sufficient evidence to go forward on each of the claims. So does that denial then preclude the trial judge from not instructing on that theory? Sure, because it recognizes that there is evidence in the record. So it's the same standard? The standard is whether or not, I think the short answer is yes. The standard is, is there evidence in the record from which the jury could make a decision in favor of the plaintiff? Well, on a directed plaintiff, you're viewing it in the light most favorable to the non-movement. Sure. So are you required to do that at a jury instruction? Yes. You have to evaluate the evidence in the light most favorable to the plaintiff in order to determine what instruction to give them? Well, that's my inference. What I would say is that the Supreme Court in Leonardi said that you have to evaluate, you cannot evaluate the evidence. You just have to see if there is evidence. So did you argue in your brief that because the judge denied a directed finding, that that is the basis for us now to reverse the decision of the same judge not to give an instruction? Not that specific argument. Then you shouldn't be arguing it there. We're going to hold you to your brief. Okay. Because counsel has to respond. We had something like this earlier today where someone was presenting something for the first time, and I don't recall reading this argument that you're making to me now. If you didn't make it, I think you'll have to forego it. Well, I apologize. All right. What Judge Flanagan did say, and this is in the brief, he stated his reasons on the record. And what he said, and this is in the record at page 1573, what I got out of it was simply that there was no padding. But I think the missing link is somebody had to come up with a reliable and a reasonable opinion that there should have been instead of just saying there wasn't any. Now, the Railroad's brief says we agree you do not have to have expert testimony to provide that link. But they want to go and say, but you need to have lay testimony. Well, you have to have some testimony. Well, I'm quoting them, and they're saying that you have to have an opinion from a lay witness. It does not need to be expert testimony. Now, one of the problems with that is, if that's what you need, the jurors can provide that. And the FELA cases are very clear. And this is a First District case, Brown v. Chicago and Northwestern. And it is abundantly clear in FELA cases that a party is entitled to an instruction based on his theory of the case if there is record evidence to support it. Now, the Railroad is arguing, and your questions are homing in on this issue, that this requires weighing of the sufficiency of the evidence by the trial judge. No, I don't think they're talking about weighing. Why don't you tell us in Brown what the evidence was that ended up being the subject of the appeal? I am drawing a blank, Your Honor. All right. Well, I think it was a mitigation. You're right. It was a mitigation of damages instruction that the Railroad had sought on behalf of the plaintiff. And the plaintiff, if I recall correctly, had not accepted an alternate job. And the trial judge didn't think that that was significant enough to instruct. This Court reversed and said there was some evidence in the record, and it should have been submitted and reversed, which is what I'm asking you to do. You mentioned that first comment. Remember you said the question and then the answer? Yes, ma'am. Is that the sum total of what you believe we should look at? Not all of it. Because the other testimony from Campos, Miller, Meda, and Erskine all corroborates the plaintiff. What? They said that they saw her fall. There was nothing supporting her. So there's no question that there wasn't a cushion. Correct. But you're saying the sum total of there was no cushion is the sum evidence. Is that right? There was no cushion. There was no restraint. There was nothing that would have prevented her from falling, even though the Railroad knew that 30 percent of the probationary employees who participate in this mandatory test fail, that the test is conducted on rock ballast, and that there's a potential for them to fall. They're all told if you think you're not going to make it, just step down. Step down, right? Step down? Is that what the wording was? Yes, ma'am. And that is a contributory negligence issue. That's not an issue with regard to the defendant's culpability, because this is a pure comparative false statute. I was just asking what the testimony was. But here, let's go through these just for a moment. This is what the response is, is that the plaintiff did not elicit testimony from anyone that the Railroad was required to use pads during testimony. Is that correct? That is correct. And that there was no testimony from any witness, including the plaintiff or any other witness, that it should have used pads. Is that correct? That's correct. And then there was no testimony from a single individual that the use of pads would have affected the outcome of the plaintiff's fall. Is that correct? There's no direct testimony about that. All right. Well, there wasn't any medical testimony about that either, was there? There is a difference of opinion between the doctors. Are you saying that there was anything from any doctor that at any time was elicited that suggested even in the slightest that a cushion would have deflected or lessened or minimized the injury? No, and I think that that is something that the jury could have decided based on the circumstances. No, they're not doctors. Now, you're saying that a doctor's testimony can be something they can use their common sense with? No, what I'm talking about is actually preventing the fall. And what I'm talking about is... Preventing the fall? Yes. No, I'm talking about preventing... How could a cushion prevent a fall? Okay. And this goes back, you can tell this is going to be a long time ago, but I used to play basketball. And in some of the gyms, the wall was right behind the basket. They had a big mat up against that wall. You would hit that so that you wouldn't fall and you wouldn't run into the bricks. That kind of... I'm talking about an upright pad that would have prevented her from actually falling. Oh, you're actually suggesting that a jury should have decided this case on the statement you're making right now, that there should have been an upright padding to block this fall to prevent the injury. I am and I'm... You don't think that would require expert testimony? I don't. And it's not only me, it's the U.S. Supreme Court and the Seventh Circuit who have decided in FELA cases and Jones Act cases, and I'll discuss those in just a second, Jones Act cases are relevant because the Jones Act incorporates the FELA by express statutory reference. So they're considered twin statutes. But in Salem v. U.S. Lines, that's a U.S. Supreme Court case, they held it was proper to submit the plaintiff's theory that the defendant was negligent for failing to provide reins or other safety devices despite the absence of any opinion testimony that proper marine architecture required it. What was the name of that case? Salem v. U.S. Lines. And it's discussed at several points in the brief. The Seventh Circuit's decision in Lynch says, we consider first the implication that expert testimony is necessary to survive summary judgment on an FELA claim. Courts have consistently rejected that position, holding that expert testimony is not required. And they said specifically that no expert testimony was needed to establish why the top rail of a chain link fence fell out and struck the plaintiff. Lynch cited Harbin, which reversed summary judgment even though the plaintiff was claiming his heart attack was caused by exposure to pollutants, caused through the railroad's activities, even though the plaintiff had no expert testimony regarding the air quality or the amount of soot in the roundhouse. Lynch summarized the Harbin holding by saying, a jury could reasonably conclude that the failure to implement a different cleaning method, such as a vacuum, rather than an air pressure hose, and the failure to take other precautions, such as more effective face masks, was negligent. Now, the Seventh Circuit concluded we did not require expert testimony. We know, we kind of are past that, aren't we? Everyone's agreed, including the judge that reviewed this, a separate judge that reviewed the motion for a new trial, and absolutely everyone has already concluded, and the case law is clear, that expert testimony is not required. And if expert testimony isn't required, then a jury is as well equipped as a lay witness to make these conclusions. Well, I don't, I mean, I agree with the principle that expert testimony is not required, but I don't think you're going to be able to cite a single case that would suggest that having a backboard with rubber padding vertically placed in this particular case, that somehow you have put that into the record with some evidence that would then suggest the court should have instructed the jury based upon this theory. Well, I mean, I just don't know how you get to this backboard theory at all. You know, you're talking about a significant piece of equipment, aren't you? Well, not in the context of the cost of a railcar. How would the jury ever envision what you're describing? Well, we weren't able to argue it to the jurors because the judge refused to instruct. Do you think you would have been able to argue that one to the jury? Absolutely. Do you think that there would be some basis in the record for your position that I used to play basketball, and when I didn't, we had these large padding walls behind us to break our fall, and therefore you can consider this in deciding whether or not there was a duty first to have this padding, whether there was a breach of the duty to have this padding, and whether the fact that the padding wasn't there approximately caused her injuries and then your damages? Well, okay, I'm going to try to... Because all of those are the elements that you have to establish. No, and I respectfully disagree. Okay, is that the duty and breach? There's duty and there's breach, but... But you do have to get a duty in there first. But if we look at the Supreme Court's decision in Marshall v. Burgergate, they caution the courts not to try to microanalyze the duty. You get a duty of due care. Breach is a different issue, and that's where we get into should they have had padding, should they have had a restraint, should they have had fall protection of some kind. They have a statutory duty to provide a safe place to work. It's up to the jury to decide whether they breach that duty by not having something to prevent this woman's fall when they're having her hang off of a rail car and perform different maneuvers over rock ballast. Did you try the case? No, ma'am. Oh, all right. Well, then I can ask you, there could have been a multiple number of questions asked of all these witnesses. There could, but the railroad didn't dispute that they didn't have any of these protections. It's mostly about padding, right? This case doesn't involve anything other than your claim that there was a duty to have padding. Well, it does involve a little bit more than padding because the instruction also, I've got to find the actual instruction here. But what was pleaded and what was requested of the jury, or what the judge instructed the jury on, was a little bit broader than the court is asking. Well, what you're really saying is there was pigeon broth, pigeon broth bone here. Well, I would suggest that it was more than pigeon broth, pigeon bone broth, but it was enough. All right. The question that was, there was one question asked and one answer given at the trial, right?  Was there any pad or anything else to help in case somebody fell? Okay, so tell me if I'm reading this right. Question, did the railroad have any sort of pads or anything on the ground beneath the test area to maybe help in case somebody fell? Answer, no. Right. That's talking about padding that's upright? Right. That doesn't sound like that to me. That sounds to me like you're talking about a pad, literally it says, on the ground. I thought you were talking about a pad underneath. So if someone falls, instead of landing on rock ballast, they fall on some nice cushion. I'm talking. You're saying that you were talking about an upright that will not, will not. So it shouldn't fall, but prevent a fall. Prevent a fall, sure. How do you get that from that question? Because, I guess because it says. On the ground? Is that a pad that's on the ground? Well. To help in case somebody falls? I understand why it could be interpreted the way you're interpreting it. The pad has to be on the ground at some point. You're interpreting it as horizontal and I get that. But I think the intent was that it's an upright pad, so in case she falls, she's got something to brace herself against and so she won't fall onto the rock ballast. How close would this be? How close would this be to her? It should be within arm's reach. Okay. So isn't that another leap? You're kind of asking a jury to talk about in deliberations about there should be a padded panel within arm's reach so that it would protect against her fall. I mean, how could they possibly come to these things you're talking about? Well, in a way. Would it be a violation of their oath when they say that they're supposed to, they're instructed that they have to base their decision on the evidence and not arguments of counsel? In our brief, we discuss the role of the jury in the FELA, and specifically Lavender v. Curran, where the U.S. Supreme Court says that the jurors are required to engage in some speculation in an FELA case. And there's nothing wrong with that. It's part of the statute. And it's part of the statute so that the employees have protection. That's the whole goal of this. And the statute puts an extremely low burden on the employee to sustain his claim. Now, I do want to get back one moment to what Judge Flanagan said, which is that he was requiring a reliable and reasonable opinion that there should have been something. And that's exactly what the FELA jurisprudence I talked about from the Seventh Circuit and from the U.S. Supreme Court says, no, you don't need that. The jurors are empowered to come to these decisions themselves unlike common law cases. So for that reason, I would request that the Court reverse the judgment and remand for a new trial. Thank you, Mr. Chairman. Ms. Freeman? Go right ahead. Thank you. Good morning again. May it please the Court. For the first time this morning, we heard that the padding that counsel was talking about during trial was some sort of upright padding that was within arm's length of Ms. Ferrari as she was performing this hang test that wouldn't have caught her fall, per se, but would have prevented her fall. And the fact that we heard about that for the first time this morning, I believe highlights the issue in front of this Court today, which is that during the course of this trial, plaintiff's counsel simply did not submit evidence to support his theory that there should have been padding or other protection. They never submitted any evidence to describe what kind of padding or other protection there might have been, whether Union Pacific could have provided that padding, or whether it would have made a difference in the end. I will admit that I've spent a lot of time thinking about this case over the past couple of weeks, and not once did I consider that what we might be talking about is an upright pad that would have caught Ms. Ferrari's fall. I considered that maybe we were talking about pads underneath the car, or as Judge Flanagan pointed out when he was addressing this issue, perhaps some kind of rope that we were talking about, or maybe, as he pointed out as well, padding that Ms. Ferrari would have worn, none of which was ever discussed during the course of the case. But those were all options that came into my mind, not what plaintiff's counsel has actually articulated here today. Well, do you think that it's possible that the kind of testimony that he suggested here, that a rubber-backed pad, I'm not sure what size, which is part of the problem, that would be about a foot away from the plaintiff would have stopped her fall? Do you believe that that's the kind of testimony that even a layperson could give? No, I don't think it is. And frankly, I think the type of pad that we've discussed here today wouldn't have been possible. I mean, this test took place in a rail yard, on a rail car, outside, on tracks. I mean, there is no way that this type of padding even could have been put in place, let alone whether it would have prevented or stopped Ms. Ferrari from falling. If it could have been put into place, I'm not really sure, but I don't think you could surmise that. I think someone would have to actually testify to that fact, and that it would actually prevent a fall, as opposed to lessening an impact upon a fall to a cushion on the ground. Yes, no, I agree. I agree, Your Honor, and I don't know who would have come in to testify to that, but yes, if we were talking about the type of padding that's been described today, there certainly would have had to have been someone who would have explained how this would have worked and why it would have mattered. The standard that is clear, and I actually think that the parties agree on this, is that if a party wants to have a jury instructed on one of their theories of the case, they have to present evidence to support that theory. They cannot just walk in and say there was a fall and there wasn't padding, and we should instruct the jury that that was somehow a breach of Union Pacific's duty to provide a reasonably safe place to work. They have to present more evidence so that a theory of liability is articulated. Do you agree that the proof requirements are different under FELA, that it's a more plaintiff-friendly, liberal view of the evidence? There's no question that the FELA is a more plaintiff-friendly, a lesser standard than in a standard negligence case. But I think when we're talking about a jury instruction issue, the standard is the same in both FELA and non-FELA cases, and we can get that from the cases from this Court. We talked about Brown a bit. I mean, in the Brown case, it was very clearly stated. A party is entitled to have their instruction read to the jury if there's some evidence to support their theory. The question is really, what is some evidence? And I think in this case, when we have a single question and answer regarding padding and nothing beyond that, plaintiff simply has not met their burden. Well, you know, the cases do say that the standards for FELA cases are less than the common law negligence. But is there any statement in any case that the elements of negligence are different? No, not at all. So is there some requirement, then, that there be an establishment of duty, even if it's just pigeon-brown bow? What is it? Pigeon-brown bow. Tough time saying it. That kind of makes it look pretty slim, but you still have to show there was a duty to have a cushion. Is that right? I believe it is, Your Honor. You're correct. You're entirely correct. Well, saying there was no cushion, I don't know how that's a duty. Right. It doesn't connect up. I mean, the fact that there was not a cushion does not connect up with the rest of the elements of negligence. What do you think they should have done to establish a duty? I think they should have presented some kind of evidence discussing what kind of padding we're talking about, of course, whether it was possible to provide it, maybe whether it had been provided in other situations, and why it would have mattered. Are we talking about stopping the fall entirely, or are we talking about lessening injuries? Until today, we didn't know, and that's the problem. That's why there was not sufficient evidence presented on this issue before the trial court. Well, is it enough from this one question? Did the railroad have any sort of pads or anything on the ground to maybe help somebody in case somebody fell? No, I don't think that's enough. I don't believe that that's enough at all. I mean, that simply establishes the fact that there wasn't padding. It doesn't go beyond that. And what about this to help somebody? I still don't think that's enough at all. It's not clear from that question and answer what the help would have been or how or why or why not having that is negligence at all. Isn't it a matter of common sense that padding would help break a fall? Do you need an expert to say that a padding would have broken the fall? No, I actually don't. And do you have to specify the thickness of the padding? Really, I mean, I don't know where you live about it, but I mean, you know, sometimes expert testimony is necessary on these things, and sometimes you need to bring in professionals to say, oh, you couldn't do something like that in this context. It would actually make it more dangerous, and here's why. Sometimes you don't, though. Some of this stuff is just basic common sense. A cushion breaking a fall, that's kind of common sense, isn't it? Well, actually, I don't think it is in this case. I think that you're kind of hitting on two issues here. One is that although the standard is clear, how much evidence is going to be required for a theory to be submitted to the jury differs by case because it differs with the facts of the case and the claim that you're dealing with. As far as it being common sense to say that a pad would have broken or lessened Ms. Ferrari's fall, I think in this case it's not common sense. There was a lot of time spent in this case on the fact that Ms. Ferrari had a pretty extensive preexisting medical history, including preexisting back conditions. And so for the jury to have necessarily just by common sense decided, well, this pad would have lessened her fall, I don't think that's true. Well, I didn't say it would necessarily reach that. We're not talking about necessarily reaching anything. We're talking about is there some evidence, right? I mean, I think you're just heightening the standard a bit, quite a bit, actually. He was just making the point that his position, I think, is that it's pretty obvious that a cushion is going to help break a fall, and it quite obviously wasn't there. If she had a preexisting condition, okay, fine, that's all stuff you get to argue also to the jury. But why don't they get to hear an argument that had there been a padding, things might have been better? Because to be entitled to submit that argument to the jury, the plaintiff's counsel has to actually submit evidence to support it. And simply establishing that there was not padding just isn't enough here. Even if we might say, yeah, if there's padding, it might break a fall, you have to support that theory in this case with actual evidence for why, given the situation, it would have helped to prevent her fall or might have helped to prevent her fall. What do you mean by it might break a fall? Aren't we talking about a doctor saying that if you fell on a part of your body and there was, say, a two-inch thick cushion, it might have lessened the injury? I mean, are we really speculating now? Can a juror really decide that if there was a cushion under her, that she still wouldn't have injured herself? I mean, I don't know that that's common sense at all. It may have lessened the blow. I'm not really sure. I think that we're talking now in the realm of, you know, medical testimony perhaps. I really don't know. I would think that if there was a mattress under there, you know, maybe she wouldn't have hurt herself at all, you know. Or if it was a fairly, I mean, I think there is some common sense for that kind of thought, that if the railroad had mattresses under every positioned person, you know, maybe they wouldn't hurt themselves at all. But I don't know. I mean, nobody talked about that. No one said anything other than that there weren't cushions. It might have helped. I don't know. No, I do think you're correct, and I think that one of the options would have been medical testimony. Certainly one of her treating physicians could have said, yeah, if there was a mattress, that might have lessened her fall. But, again, that goes back to the original point that we don't even know what we're talking about here. Well, couldn't they have asked the railroad people, you know, how much would it cost you to have pillows out there, cushions? Or could you have put a cushion out there? Would it have been reasonable for you to put a cushion out there instead of this ballast that everybody's, you know, subject to falling upon? Certainly. Those are all questions that could have been asked here, and I think if any one of the questions had been asked in addition to the one single question and answer that was asked, then we may not be here today. This issue may have been submitted to the jury. I don't think it would have changed the outcome, but the issue may have been before the jury. But that's just the point. It is the party who wants the instruction to go to the jury. It's their burden. All right. The final thing that I would ask you is this. There were multiple grounds that the jury was asked to determine whether or not there was negligence here. When we're talking about an error, even in an instruction, is there a burden on the plaintiff to show us that this jury would have concluded otherwise, that the error was prejudicial and the outcome of this trial would have been different? Yes, Your Honor, I believe that there is. What was just the couple of grounds that the jury had? The jury heard that this test had been suspended elsewhere on the railroad, and so was asked to determine whether perhaps the Chicago Service Unit continuing to do this test, that might have been a breach of its duty to provide a reasonably safe place to work. There were two separate instructions regarding the gloves, regarding the size of the gloves and regarding whether she had to use company-issued gloves or could have used her own personal gloves. There was an issue about standing on the sill step, which was the step that was two feet off of the ground, whether that was somehow negligent. And there was an issue, I forget the last one, but I have it here, oh, that she, it might have been negligent to require her to rely on her arms to support her body weight while she was doing this test. But the jury was instructed about the duty under FELA. Absolutely. Provide a reasonably safe workplace. That's correct. So they could have then, based on her question and her answer, they could have determined that having a cushion wasn't part of that duty. They could have signed in favor of plaintiff. Absolutely. No, I mean, they decided against her. But what I'm saying is they could have, if they were using their common sense, they could have actually rejected this idea in their decision. Absolutely. Yes. Yes. If this issue had gone to the jury. That's correct. Yes. In closing then, I will just say that, you know, two judges did evaluate plaintiff's argument here. Both Judge Flanagan and Judge Flannery heard the entire argument. They did not hear that we were talking about an upright pad, but they did hear the claim that the plaintiff believes they met their burden. Both judges decided that it would not have been appropriate to instruct the jury on this issue. The jury was instructed on the duty, on Union Pacific's potential breaches, and on the potential damages in the case and found in favor of Union Pacific. I would ask that this court affirm the rulings of both Judge Flanagan and Judge Flannery and uphold the verdict of the jury in this case. Thank you, Ms. Freeman. Thank you. Mr. Jicks, brief rebuttal. Thank you, Your Honor. First of all, the plaintiff's burden is not to show that the instruction would have made a difference. The Supreme Court's decision in the Leonardi case says whether the jury would have been persuaded is not the question. All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction. There was some evidence. No, no, no. We're talking about whether, assuming it was there, would a new trial be required. Right. And that's my point. There is no harmless error for failure to instruct on a theory for which there's evidence. And that's what the Supreme Court says in Leonardi. You don't have to show that it would have made a difference. You don't have to show that the jury would have been persuaded. You're saying the Illinois procedural law doesn't apply. I'm saying Illinois procedural law does apply. This is the Illinois Supreme Court in Leonardi. You're saying it's an automatic reversal if there's an error in the jury instruction? Yes. Not an error in jury instructions. A failure or a refusal to submit on a theory that the plaintiff has evidence on and has pleaded. And when Ms. Graham says we don't know what they're talking about, this theory was in the complaint from day one, and what it said was, and first of all, with regard to Justice McBarn's question about duty to provide proper tools, equipment, and assistance, we pleaded that. Yes, but you have to prove what tools you're talking about. You presented a brand-new theory about a vertical pad. We don't know the thickness. We don't know the size. We don't even know the dimensions. We don't know how far it was supposed to be or not supposed to be. Of course we could consider that if it were in the record. But saying a tool is a conclusion. Juries must hear facts and evidence. You can't just say they didn't provide a tool. We need to know what tool you're speaking of. So does the jury. Well, that turns the FBLA jurisprudence on its head. No, we have to prove that they failed to provide a safe place to work. Now, in our complaint, we said- How do we know that the jury didn't take and reject your theory then? Because it wasn't given to them. No, but you said common sense can tell them that they should have known when she asked, when she was asked this question, they should have assumed that not having the padding didn't provide them with a safe workplace. How do we know they didn't reject your theory? Well, because jurors are presumed to follow the instructions, and they were told that they could find for the plaintiff if they found certain things. One of the things that they were not told they could find was the padding, the fall protection theory. And in the complaint, we did put some flesh on this and say netting, padding, or any other device to prevent or lessen the injuries to employees who do not successfully complete. You know you're aware that normally any of that kind of testimony would be presented by an expert, and there's all sorts of regulations for netting, padding. You know, I mean, are you really saying that we wouldn't hear that out of an expert? I'm saying that you didn't and that it's not necessary. Could it have been? You know, that's a different issue. Now, Rogers, which has... Does netting appear in the record anywhere in the word? I don't believe other than in the complaint. Okay. Are you now suggesting that the jury will be looking at the complaint and so they would have been able to determine by common sense that netting would have stopped everything here? Something to prevent her from falling, and I think that was the thrust of the question. Was there padding? Was there anything else in case somebody fell? That was the question. Did you propose the instruction you're referring to now? I did not participate in the trial. Did the lawyer then? Yes, yeah. The instruction that was submitted was padding or some other? Where in the record is your proposed idea? That is in the record at C1010, 1010. It's in the appendix at age 7, and it says, padding or any other protection to prevent or lessen injuries to employees who did not successfully complete the hang test. So you think the word protection is something the jury could determine? Absolutely. By common sense? Yes. All right. Now, counsel, you have to show prejudice, though, right? I mean, even if there's error, we don't reverse every civil jury decision. Even if we find that an instruction should have been given on a theory of the case, we still require a showing of serious prejudice, right? It's not automatic reversal. It is automatic reversal when there is evidence in the record and the judge simply refuses to give the instruction. In the railroads cases, all deal with abuse of discretion on evidentiary issues, and I would agree on those. Absolutely. You have to show prejudice. But on an instructional issue, when you are talking about a theory of recovery and you're preventing a party from having a theory of the case decided by the jury, that is prejudice as a matter of law. A theory of the case that was so crucial to the plaintiff's case that you asked a grand total of one question. Well, there's no cross-examination, and obviously the railroad could have fleshed that out. But, yeah, I agree. If there's not much, that's not prejudice. A railroad could have crossed out the plaintiff's theory of the case? If they're saying, we don't understand it, that's why it crosses the burden. Did we forget about that one? Well, the burden is on... Who has to plead and prove a case? The plaintiff has to prove that the defendant failed to provide a reasonably safe place to work. We did that. And the reason it's not safe is because it didn't have anything to keep her from falling. Now, the railroad could have come back and said, you know, that's impractical. In order to do the test, we have to have an open space. We have to have so much room. We have to have it on ballast. We couldn't have fall protection. We couldn't have a vest with a lanyard. We couldn't do any of those things. They didn't do that. There was no evidence that any of this was impractical or that some device could have been used to prevent her fall. Plaintiff's burden is simply to show that what they gave her was unsafe. And that's why this case should be reversed. Thank you, Mr. Jones. Okay, the court will take the matter under advisement and issue an order as soon as possible. Thank you both.